IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Developers Surety and Indemnity Company,   )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>Carothers Construction, Inc.,   )<br>)<br>Defendant.   )<br>_____)  | Civil Action No. 9:17-1419-RMG<br><br><br>**ORDER AND OPINION** |

This matter is before the Court on Defendant Carothers Construction, Inc.'s motion to dismiss or in the alternative to transfer. For the reasons set forth below, the Court grants in part the motion and transfers this action to the Southern District of Mississippi.

I.   **Background**

On July 16, 2015, Liberty Enterprises Specialty Contractor ("Liberty") and Carothers entered into a subcontract for work to be performed at Marine Corps Air Station Beaufort (the "Project"). (Dkt. No. 1-1 ¶¶ 3–4.) Plaintiff Developers Surety and Indemnity Company ("DSI") is not a signatory to that subcontract, but it executed a performance bond and a payment bond for that subcontract on behalf of Liberty and in favor of Carothers for work on the Project. (*Id.* ¶ 7.) South Carolina law governs the bonds. (*Id.* ¶ 8). Carothers claims Liberty defaulted and abandoned the Project, and asserts claims of approximately $130,000 against the bonds issued on behalf of Liberty. (*Id.* at Ex. C ¶¶ 20, 29.)

On April 17, 2017, Carothers filed a demand for arbitration with the American Arbitration Association. (*Id.* ¶ 12.) That demand combines over $4,000,000 in claims against DSI regarding four unrelated projects in four states: Georgia, Connecticut, Kansas, and the South Carolina work at issue in this matter. (*Id.* ¶ 13.) According to Carothers, the bonds incorporate by reference the

subcontract's mandatory arbitration clause. (*See* Dkt. No. 1-2 at 15–16.) Carothers seeks arbitration in Jackson, Mississippi, which is the forum the arbitration clause specifies. (*See id.*)

On April 28, 2017, DSI filed the present action in the Beaufort County Court of Common Pleas, seeking declaratory judgment that it is not subject to a binding arbitration agreement with Carothers and injunctive relief. (*Id.* ¶ 15.) On May 31, 2017, Carothers removed to this Court. On June 7, 2017, Carothers moved to dismiss or in the alternative to transfer, arguing that DSI's claims are subject to arbitration and that DSI is estopped from denying it is bound by the subcontract's arbitration provision. Carothers seeks dismissal or, in the alternative, transfer to the Southern District of Mississippi (where Carothers could seek an order compelling arbitration), or, in the further alternative, transfer to the Middle District of Georgia.

## II.   Legal Standard

### A.   Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") reflects a liberal policy toward arbitration. The Act provides that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable and enforceable" unless there exists grounds for revocation in law or equity. 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A litigant can compel arbitration under the FAA if the litigant can demonstrate: "'(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.'" *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)). District courts have "no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*,

303 F.3d at 500. However, "[t]he majority view holds that, where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has the authority to compel arbitration under § 4 of the FAA." *Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co.*, 628 F. Supp. 2d 674, 683 (E.D. Va. 2009). Where a valid arbitration agreement covering the issues in a case exists but the agreement specifies an arbitral venue outside the district, transfer is the appropriate remedy, because "if the forum selection clause is mandatory, then, the interest of justice would weigh toward transfer." *Id.* at 685 (internal quotation marks omitted).

### B.      Motion to Dismiss or to Stay Proceedings

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration, and "[t]his stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500; *see also* 9 U.S.C. § 3; *Hooters*, 173 F.3d at 937. The Fourth Circuit has also held that if all of the claims asserted in a complaint are subject to arbitration, dismissal of the complaint is "an appropriate remedy." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). The Fourth Circuit has noted the inconsistency between its opinions on this issue. *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) ("There may be some tension between our decision in *Hooters*—indicating that a stay is required when the arbitration agreement 'covers the matter in dispute'—and *Choice Hotels*—sanctioning dismissal 'when all of the issues presented . . . are arbitrable.'"). It has also noted that the circuits are divided on this question, which it has not resolved for this Circuit. *Id.* A motion to dismiss in favor of arbitration may be made under Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Lomax v. Weinstock, Friedman & Friedman, P.A*, No. CIV. CCB-13-1442, 2014 WL 176779, at *2 (D. Md. Jan. 15,

2014) (collecting cases), *aff'd sub nom. Lomax v. Weinstock, Friedman & Friedman, P.A.*, 583 F. App'x 100 (4th Cir. 2014).

## III. Discussion

Carothers seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Carothers argues DSI has not stated a claim for relief because DSI is bound to arbitrate the claims it presents to this Court for adjudication. (Dkt. No. 4-1 at 6.) DSI, however, seeks only "determination of whether a valid, enforceable agreement to arbitrate exists" and an order "Declaring that DSI is not required to arbitrate any of Defendant's claims against it," and an injunction against compelled arbitration. (Dkt. No. 1-1 ¶¶ 16, 22.) The validity of an arbitration clause is not subject to mandatory arbitration when the clause itself is challenged. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). DSI has properly pleaded a claim for declaratory judgment adjudicating whether Carothers's claims against it as surety for Liberty are subject to binding arbitration.[1]

The Court therefore declines to dismiss this matter for failure to state a claim and proceeds to consider the first alternative relief Carothers seeks, transfer to the Southern District of Mississippi for the purpose of compelling arbitration. Whether DSI agreed to binding arbitration is a legal question of contract interpretation. *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 377 (4th Cir. 1998). The relevant contracts are attached to and integral to the complaint and may

---

[1] Because the Court holds, *infra*, that DSI is subject to binding arbitration under the FAA and as a matter of South Carolina contract law, it does not reach Carothers's argument that the complaint should be dismissed because DSI is equitably estopped from refusing to arbitrate. In South Carolina, "equity is only available when a party is without an adequate remedy at law." *EllisDon Const., Inc. v. Clemson Univ.*, 707 S.E.2d 399, 401 (S.C. 2011).

be considered on a motion to dismiss. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013).

The parties agree the subcontract has a mandatory arbitration clause and the parties agree that clause is incorporated into the bonds by reference. (*See* Dkt. No. 5 at 9.) But DSI argues that the language of the arbitration clause, which states, "all claims, disputes, and other matters in controversy between the Contractor and the Subcontractor arising out of or relating to this Subcontract shall be decided by binding arbitration" (Dkt. No. 1-2 at 15–16), does not cover DSI because DSI is neither the contractor nor the subcontractor. According to DSI, disputes arising out of the subcontract between parties other than the contractor and subcontractor are not subject to binding arbitration. DSI also argues claims arising from the bonds, as distinct from claims arising from the subcontract, are not subject to the arbitration clause.

Carothers's claims plainly arise from the subcontract. It is difficult to imagine how Carothers could articulate a claim for payment from DSI on behalf of Liberty based on breach of the subcontract between Carothers and Liberty that does not arise from the subcontract between Carothers and Liberty. Further, the arbitration clause at issue here is a "broad" arbitration clause. The agreement applies to any claims, disputes or other matters "arising out of or relating to" the subcontract. (Dkt. No. 1-2 at 15–16.) "Both the Supreme Court and [the Fourth Circuit] have characterized similar formulations to be broad arbitration clauses capable of an expansive reach." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996). Broad arbitration clauses do not "limit arbitration to the literal interpretation or performance of the contract[, but] embrace[] every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* (internal quotation marks omitted). A

claim for money damages for a breach of the subcontract is a dispute with a "significant relationship" to the subcontract.

DSI's contrary argument is based on a misreading of an Eighth Circuit case applying North Dakota law. *See AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 242 F.3d 777, 780 (8th Cir. 2001); *cf. Great Am. Ins. Co. v. Hinkle Contracting Corp.*, 497 F. App'x 348, 354 & n.1 (4th Cir. 2012) (finding *AgGrows* "unpersuasive" when vacating a district court's holding that an obligee's claims were not arbitrable under the terms of a subcontract incorporated in a performance bond). In *AgGrow*, the Eighth Circuit held that performance bond's incorporation of an arbitration clause was ambiguous about whether disputes between the obligee and surety must be arbitrated. *Id.* at 781. Applying a North Dakota statute permitting courts to resolve contract ambiguity "by reference to the circumstances under which it was made and the matter to which it relate," the court held that the incorporation clause's "obvious purpose was to clarify the extent of the surety's secondary obligation" and not "to compel arbitration of all disputes between the surety and the obligee." *Id.* at 782 (citing N.D. Cent. Code § 9-07-12). *AgGrow* held that an obligee and surety did not agree to arbitrate their disputes; it does not suggest that the obligee's claims for payment from the surety of an underlying contract do not arise from or relate to the underlying contract.

In the present case, this Court must look to South Carolina law, not North Dakota law. (Dkt. No. 1-1 ¶ 8 (South Carolina choice of law clause).) Under South Carolina law, "[a]rbitration of disputes arising under a contract may be provided for by reference to outside documents." *First Baptist Church of Timmonsville v. George A. Creed & Son, Inc.*, 281 S.E.2d 121, 122 (S.C. 1981)); *see also Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 (4th Cir. 1985) ("It is well settled that, under the Federal Arbitration Act, an agreement to arbitrate may be validly incorporated into

a subcontract by reference to an arbitration provision in a general contract."). In *Goodwin v. Stanley Smith and Sons*, the South Carolina Court of Appeals addressed whether a subcontract's incorporation of an arbitration term from the prime contract required the parties to the subcontract to arbitrate their claims. 386 S.E.2d 464, 465–66 (S.C. Ct. App. 1989). The Court of Appeals concluded it did, and that conclusion applies with even more force where the secondary agreement incorporating terms from a prime agreement is a guarantee of the prime agreement.

DSI argues *Godwin* is distinct because the agreement at issue there also had an incorporation provision providing that the subcontractor is "bound to the Contractor by the terms of the Contractor Documents and this Agreement, and assume[s] toward the Contractor all the obligations and responsibilities that the Contractor, by those documents, assumes toward the Owner as applicable to this Subcontract." 386 S.E.2d at 465. According to DSI, because no such clause exists in the bonds, and because DSI is neither the contractor nor the subcontractor identified in the arbitration clause, the arbitration clause does not bind DSI. But that argument is without merit. Under South Carolina law, "[t]he obligation of the surety being accessory or collateral to the obligation contracted by the principal, it follows as a general rule that the liability of the surety is measured precisely by the liability of the principal." *Greenville Airport Com'n v. U.S. Fid. & Guar. Co. of Balt., Md.*, 86 S.E.2d 249, 252 (S.C. 1955). If the principal, Liberty, is liable for arbitral awards arising from the subcontract, then so is the surety, DSI. Moreover, "[w]here an agreement is incorporated into a bond so as to become a part of it the *two are construed together as a whole* to ascertain the intent of the parties." *Employers Ins. of Wausau v. Constr. Mgmt. Engineers of Florida, Inc.*, 377 S.E.2d 119, 121 (S.C. Ct. App. 1989) (emphasis added). When the Court construes the bonds and the subcontract together as a whole, it is clear the parties intended to submit disputes to binding arbitration. If DSI did not want to be bound by that term

-8-

of the subcontract, then DSI should not have guaranteed the performance of the subcontract by issuing bonds incorporating that term.

DSI is bound by the subcontract's arbitration clause, including the selection of Jackson, Mississippi as the arbitral forum. The Court therefore transfers this matter to the Southern District of Mississippi and does not reach arguments regarding venue in Georgia.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's motion to dismiss or to transfer (Dkt. No. 4) and **TRANSFERS** this matter to the Southern District of Mississippi.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

July 18, 2017
Charleston, South Carolina